Michiko Stehrenberger, appellant, appearing pro se, Tommy O. Stehrenberger, appellee, appearing pro se, and Alexandra Cavall, counsel for Anna Christine Stehrenberger, appearing as well. Okay. We've got a couple of housekeeping matters. Ms. Stehrenberger, do you want to reserve some time for rebuttal? Yes, Your Honor. If I could just split the time in half. I'm sorry? If I could split the time in half.  So seven and a half minutes. Seven and a half for the initial part. Okay. Again, we'll try to give you a heads up when you're getting close to that, but that's on you to regulate there, okay? And with respect to the appellees, I understand you folks have decided to divvy up your time? That's correct, Your Honor. Okay. Alexandra Cavall. I will go first. I will take ten minutes, and then reserving five minutes for Tommy O. Okay. Well, that's fine, and welcome to both of you. And if you go a little over the ten minutes, again, that's going to be on you, okay? If you're exceeding it by some margin, I might just give you a reminder, but that's up to you folks. Okay? Thank you. Okay. Let's begin. Ms. Stehrenberger, go ahead. Good morning, Your Honors. May it please the Court. This is Ms. Chico Stehrenberger. I'm the appellant and the creditor in this case. The opposing parties are the debtor, my younger brother, Tommy O. Stehrenberger, and his former wife, my former sister-in-law, Anna Stehrenberger. I understand that the Court is probably more familiar with their briefs than I am. I would like to ask if there are any questions right off the bat before I go into any summary of the issues. Well, I guess I don't have so much a question but a suggestion. I think we understand quite well your position on subsections 2, 4, and 6, so you probably want to spend most of your time on 19. Okay. Thank you. There is also an A2B that's related to a different matter.  That's right. Okay. So there's been enormous amounts of briefing on the split of authority about this, dueling statutory interpretations among the bankruptcy courts, the 523A19B. I've collected about 27 cases. I checked Lexis and Westlaw yesterday. There does not appear to be anything new. Well, and there's nothing governing per se, right? The Ninth Circuit is not giving us any great clues here, so this is an open question. Fair? My understanding is it's an open question. Right. Okay. Great.  Okay. So I'll just, in shorthand, I'll say in re chui, C-H-U-I, that stands for the line of cases that do give the bankruptcy court's jurisdiction to impose liability, and in shorthand, Anderson or Jafari, which stand for the proposition that there is no jurisdiction. I'm asking the court to decide that shui, that line of decisions, governs that the courts do have jurisdiction, and if we go forward from that line, we'll go to both, that we then accord full faith and credit under 28 U.S.C. 1738 to the Utah State Court's order imposing liability against the managers of the investment company, Star Mountain, that we then ask that we then use the bankruptcy court's findings and the trial testimony that both of the debtors, Tamio Sternberger and Anna Sternberger, admitted that they are the managers, that they were the managers during the time Star Mountain sold securities and that they each played an active role in selling the Star Mountain securities to Michiko. Let me jump in. Didn't the Utah State Court set aside the part of its order that held Tamio and Anna personally liable? Yes, it did. Where it left off, there was a 2018 verbal ruling. In that case, that's when the Utah Court adjusted it to only the managers and members, leaving for trial the determination of identity of who are the managers and the members. At that time, the court had also taken judicial notice that the public records did show that Tamio Sternberger. What I'm driving at is it doesn't seem to me there is a state court decision that Tamio and Anna are personally liable, correct? That is correct, yes. Okay. And that is why I'm asking under CHUI that if the court decides that the bankruptcy courts and the court here have jurisdiction that they be able to use that full faith and credit for the Utah State Court's imposition of liability against the managers plus the adversary case trial, the bankruptcy court's findings, that Tamio Sternberger and Anna Sternberger are those managers and then impose the liability, apply the damages testimony, and award a judgment and declare it non-destructible under 523.18. Okay, so just to clarify one other matter, is it your position that the evidence that was deduced at the trial in the bankruptcy court would be sufficient to get you a judgment? Because I think that was one of the issues that the bankruptcy court probably didn't go the way you would have liked. The bankruptcy court, I think, believed that there had not been a sufficient showing. So is your first argument that, yes, there was and we should simply make a finding of liability? Well, we shouldn't make a finding of liability. We should basically affirm what you think the bankruptcy court did? Or is it something else? Okay, it's two-part. One is, and thank you for that question, one is that I do believe that it's a strict liability provision under the Utah Securities Act which would allow this court or the bankruptcy court to get to the imposition of liability. However, if not all of those elements are met, I would ask, even under CHEWI and even under the jurisdiction, that this dismissal be reversed and allowed to go back to the Utah State Court to obtain any missing pieces. Okay, maybe, I'm sorry, maybe more particularly, maybe it would be, and this is a bit of a technical piece, if the bankruptcy court determined that there had not been sufficient evidence, you might be arguing that what we ought to do is vacate and confirm that the bankruptcy court had the authority to go ahead and try that issue and make a determination about it, and you should have a chance to do that on remand. Is that fair? Is that what you're suggesting to us? Yes, if you don't mind my asking the question back, by vacating, are you saying that there would be further proceedings or that the case would still be dismissed, regardless of whether or not the bankruptcy court has jurisdiction? Okay. Vacate basically means the bankruptcy court gets to start over on the issue that we vacate. That's the... Okay, okay, thank you. So, yes, I would be asking for that. Okay. The separate line of thinking that the bankruptcy courts do not have jurisdiction under Anderson or Jafari, just to be candid, I think under each one of these that the 523.819 claim should survive dismissal under either of them. So the Anderson and Jafari line of thinking, if the bankruptcy court does not have jurisdiction, asking for the same thing to please allow the creditor to go back to the Utah State Court case and obtain those missing pieces for this. The reason I'm sort of looking at that is if there is no jurisdiction, that the bankruptcy court just dismissed it without abstaining, just kind of let that claim as it's in procedural limbo right now. Bankruptcy rule 4007B allows it to be rebrought later, but without a modification of the discharge injunction, it's just frozen in time, can't go back to it. What authority does the bankruptcy court have to modify the discharge injunction? My understanding was just from some case law under the 11 U.S.C. 105A, the inherent authority to move the case forward to be able to get to a resolution for the parties. It's kind of a catch-all provision. Well, we have BAP case law that says that, I think the word is, the discharge is set in statutory concrete. It doesn't go away. But if your claim is not discharged by virtue of 19, it's not discharged. And the state court could decide that as well as anybody else. More of a comment than a question again. No, I appreciate the comment. Thank you, because I've kind of been going a few circles with that. I think it was in Ray Munoz I was looking at. It was about that as well, which is chicken or the egg. We don't know if it's non-dischargeable. Therefore, if the creditor, me, were to proceed in the state court, we'd be at risk of violating the discharge injunction. So it would be kind of a huge risk. And that's why I would be asking for some sort of guidance, whether for me or for the bankruptcy court, as to how to address that so it's not stuck in limbo. If I could jump in, you're at your seven and a half minutes if you want to stop now. Okay. I'll just briefly address the, since we're not going to talk about the 846 at 246, other than just to say I'm asking for a remand so that the bankruptcy court can apply the correct legal standard under the Utah Securities Act to those claims. And then to the EAG private lender claim, I'm just in summary asking for the court here to find that all elements have been met because of the corroborated testimony that the, that our Tommy Osterberger had mislabeled the investment account statement with his name and that that $2.2 million did not actually belong to him and therefore the lender reasonably relied upon his representations. Thank you. Okay. Ms. Cavall. Thank you. Good morning and may it please the court. My name is Alexandra Cavall and I'm here appearing on behalf of Anna Sternberger. And the focus of my argument is really 523A19. The bankruptcy court correctly dismissed that 523A19 claim after trial because the plaintiff did fail to produce a final judgment obtained from a non-bankruptcy forum imposing liability on Anna or Tommy O for the violation of state securities law. Let me ask you this, cutting right to the heart of it from my point of view. What language, what words in the current version of A19 says it has to be a non-bankruptcy forum judgment? It is, so it is the language, so that statute, 523A19 existed before BATSEPA passed in 2005. And the language in that decision, let me just flip through to 523A19. So the language says. And what I'm driving at is it says any federal or state court or administrative forum, et cetera, any. So if you just look at that, how do you come up with a conclusion that a non-bankruptcy court is – rather that a bankruptcy court can't be the court that enters that determination? So if you look at the history of that statute, that language that you're referencing existed before BATSEPA passed where the change in BATSEPA added the before, on, or after the date which the petition was filed. So before that, that language had to have meant a non-bankruptcy forum decision. Since BATSEPA didn't change that particular language, the reasoning would be that that still requires a decision from a court outside of the bankruptcy court. But don't you think that Congress probably figured that if this determination can be made after the bankruptcy court, after the bankruptcy was filed, then the bankruptcy court could be such a forum because Congress still says any federal or state court. I mean, isn't it kind of logical to presuppose that the meaning of any was the same? The only difference is that the timing changed and made it impossible for a bankruptcy court to be involved under the prior language. Don't you think Congress would have expected this? I guess what I'm coming up against. Well, no, because the idea behind 523A19 was basically statutory issue preclusion where you have the judgment already and you don't go to state court to relitigate security violations issues. The origin of that coming from the Sarbanes-Oxley Act. So the legislative history of that statute was have your decision beforehand, don't have to litigate it in bankruptcy court again, and that's consistent. But legislative history meaning committee reports and those sorts of things, which basically the Supreme Court has taught us we're not supposed to look at unless there's an ambiguity. How do we know that the provision was that limited beforehand? It certainly had the effect of making it easier for securities plaintiffs to win, but why was it limited to this idea of having people not have to prove the elements of preclusion? Why not just apply that as it is? I'm not sure I understand your question. I'm not sure either. I mean you're saying that the only purpose of A19 was to make it easier for plaintiffs to prevail in these securities cases because they didn't have to meet the preclusion tests. It's tied, in your view, tied to the preclusion point. But, of course, that's not what the prior version of A19 said either. Why is it limited to keeping people from having to establish the elements of preclusion? Why does it just meet what it says? Well, because the language of that statute, like other subsections in 523.19, required some sort of order or decision by an entity other than the bankruptcy court, and that didn't change in FAPCPA. Yeah. Well, so those that refer to, for instance, criminal restitution, we know that the bankruptcy court doesn't have jurisdiction over criminal matters and doesn't have any adjudicative authority. But isn't that fundamentally different than the language in A19, which talks generally of a state or federal court in a civil matter? I mean, I think when you look at the Jafari line of cases, it addresses that. But there are certain statutes in 523.19 that require it. And A8 or 11, the one that I think you're referencing, Your Honor, is one of them. But there are other ones that ask for some determination, whether it be the assessment of a fine or something else of that nature. That's going to require determination by a third-party non-bankruptcy court. Well, can I put it a little bit differently, but I think it's a similar point? The 523 contemplates in most circumstances that the bankruptcy court can both adjudicate the claim and determine that it's nondischargeable, certainly with respect to contract claims, tort claims, landlord-tenant, on and on and on and on, right? So I think it is — I don't think it's unfair to say that it is the norm that the bankruptcy court in most instances, unless otherwise, you know, statutorily set forth or for other reasons that we can all agree on, the particular expertise of a different court, the bankruptcy court has the ability to simply adjudicate a claim. Now, we don't do that in criminal matters. We don't do that in family law matters. But would you agree that the gestalt otherwise is we get to do that? And is there a reason why we shouldn't be able to do that in connection with a securities violation? I think if we're talking broadly, 523.19, not every single — I'm not talking broadly. I'm talking 523. I'm talking what is the structure of the statute. The structure of the statute is in most instances, we can adjudicate the claim and find it's non-dischargeable. So give me — I mean, you may have a great reason why securities laws violations ought to be different. What is it? The — for the securities violations, they're — I mean, in this particular subsection, it's not going to be different than the subsections in 523, whether it is A7, A11, A13, or A17, that require an — a determination in the sense of an assessment of a fine or an assessment of liability by some third party. Other sections in 523A don't require that. For example, 523A2 don't require that. So in situations where — Well, no, no. It absolutely does. It requires a determination of how the damages were, whether attorney's fees should be, whether there's another penalty. It absolutely does. So, I mean, my question is, A19 simply doesn't say what you say it says. It doesn't exclude the bankruptcy court. But you may have a great policy reason why that should be the answer. So that's what I'm looking for. The — I mean, the history of that statute, the legislative history of that statute, and your — and this court's prior decision in Rodriguez suggests that it is simply an issue preclusion statute. In that particular case in Rodriguez, the language used was — I can find it here real quickly. You're referring to the VAP decision in Rodriguez? Yes, the Rodriguez versus Hotchkiss one. In that particular case, this court noted that, as evidenced by the plain language of the statute, 523A19AI-NBI set forth an expedited process that accord preclusive effect to appropriately memorialized judgments arising from liability for security law violations and securities fraud. But weren't the facts different in Rodriguez? There was such an order in Rodriguez. And so it seems to me that Rodriguez didn't necessarily decide the question that's before us, but instead was sort of generally stating the law, how it worked in that context where there was a prior order. I mean, in that case, there was a prior order. But the language, I think, still applies in that it requires that determination to be a memorialized judgment from a — arising for liability for security violations from some outside entity, outside forum. And to answer one of the questions that — I mean, one of the fundamental issues in this particular case is that the issue of that non-final judgment was raised early on. And the plaintiff waited until 60 days before trial to raise the issue of letting the issue be decided by, well, abstention. That issue, this issue could have been raised and addressed at the very beginning of the case, where she could have sought state relief to pursue the matter had she so chosen. But she was adamant, plaintiff was adamant that she had a final judgment and did not. So I'm looking at the time. Yeah, if you want to hand off to your worthy co-padre there, that's fine. Okay.  Hello, Your Honors. I feel like I'm in this position where I'm in over my head with this. I don't know if it would be the best use of time to talk about what I prepared for this, to talk about the history of this case that spans 14 years and what we've been through to get to this point. I don't know if what I can offer will benefit anything above what Ms. Cavall has said. I don't know if you would like to ask more questions to her about that. I think that might be a better use of time than what I have prepared. It's entirely up to you. If you'd like to defer back to your co-counsel here, that's perfectly fine. But we're very interested in anything you have to say. So, you know, this is your time. And if there's a point you want to make or something you want to make sure we remember, feel free. And I promise we'll listen. And if you want to seize your time back to Ms. Cavall, that's fine too. It's totally up to you. Okay. Well, I will cut this down immensely simply to say this started in 2009. The case was dismissed in 2015 because of Abilene Machiko's failure to prosecute for almost four years, during which time she was in another Washington State appeals case. She refiled this case. We recommenced it. And in 2019, we sought for bankruptcy protection. We went through the adversary proceedings of several years to reiterate what Ms. Cavall said. I think the judge did a good job explaining where and why he came up with the decision to dismiss all of her claims. Here we are in this appeals panel, and we have several motions in front of us. I think the patterns we have seen in these almost three different cases, this coming the fourth, is very litigious. Abilene Machiko has a history of vexatious litigating, and she's in currently two other lawsuits, one in the appeals in Washington and another case in Idaho. I need to caution you. You need to stick to what's in the record of this case. I'm not sure a lot of the things that you've said were brought before the bankruptcy court. Go ahead. Okay. Okay. I would simply just then close to say I feel she's had adamant time in the case, in the court case, and had her day twice in the Utah case that was dismissed. She had her chance, and in the adversary proceedings case, and here we are today. I will close with that and turn back over the time to any other questions you might have. Okay. Thank you. Ms. Cavall? I don't think I have anything further to add unless the court or the panel has questions for me. I have a question. At the end of the day, the panel disagrees on the legal point, 523A19. What's the appropriate disposition of the case? Is it that it ought to go back, or do you think that the appellant had an opportunity to litigate the A19 issue factually? I think that the five, so the issue, the facts that gave rise to the 523A19 also gave rise in the state court litigation to her 523A2A claim and her A24 claim and her A26 claim, or A6 claim, excuse me. So that same set of facts she tried under four different theory, non-dischargeability theories. If, I mean, I think she has clearly failed on two, four, and six. If this panel reverses and finds that the bankruptcy court has the ability to decide a 523A19 to try it or to enter the liability determination, then I think it is possible to vacate on that ground, but the underlying facts have already been determined to not be sufficient for an A24 and A6 non-dischargeability action. Any other questions for anybody? Not for me, thank you. Thank you very much. Okay. Ms. Sternberger, you've got six and a half minutes, a little more than that. Thank you. I want to ask you a question right off the top, and that is let's assume for the moment that we end up agreeing with you and holding that the bankruptcy court can enter the order that A19 requires. Let's assume we agree with you on that. What additional evidence would you offer, if any, to establish if there was a Utah securities violation or other securities violation that you didn't offer previously? Thank you, Your Honor. That's an excellent question. In the state court, it was timely pledged, so those were preserved. The debtors, Tommy S. Sternberger and Anna Sternberger, were not licensed to sell securities. The Star Mountain offering was not a registered investment. There were other steps along the way where there were misrepresentations or omissions in terms of – And these are points that you did not offer evidence to the bankruptcy court on? It's not already in the record? No. Those were actually – could still be decided in the Utah State Court, but they were not pursued in the cursory case. If I may add, in looking at Bankruptcy Rule 4007B, it seems like it would allow it to be brought back with further muscle to it Once it's been decided in the Utah State Court, it does seem like the rules would allow there to be a stronger case made with additional evidence. Didn't the bankruptcy court remark, among other things, that you made an argument that there were some registration requirements, but you didn't provide any authority for that? Would that give you the chance to say, well, Judge, here's the authority, for example? It would. Okay. Okay. I was just going to address Ms. Cabal's comment about – I never represented to the court that there was a final judgment. It was always an order, and it was a matter of, can the bankruptcy court connect the order imposing liability against the managers with finding that debtors, Tommy Osterberg and Ann Sternberg, are the managers? So there was never any representation by me that that was a final judgment. I would say that during the first 839 days in the case, the bankruptcy court could have raised the issue. I think federal courts are required to examine their own jurisdiction. I'm not trying to blame the bankruptcy court, Judge, but I think the delay was on both sides because Ms. Cabal brought two motions to dismiss challenging the bankruptcy court's jurisdiction under that exact provision, 523A19B. The bankruptcy court denied her motions to dismiss on that jurisdictional challenge, which signaled, it seemed, for the bulk of the case, that the bankruptcy court did believe that it does have jurisdiction. And it was only late in the case, just 40 days before trial, that it examined Anderson and made that determination that it felt that it lacked jurisdiction. At that point, it was after – 10 days after the pretrial motions deadline had already expired. So the bankruptcy court decided that my motion for a mandatory abstention under 13 – sorry, 28 U.S.C. 1334C2 was untimely. I bring that up as under that provision, 1332C2, as well as Bankruptcy Rule 5011. Regarding abstention, there's no time limit regarding what constitutes a timely motion. I don't want to assume which way the court will go on this, but if the court were to decide that the bankruptcy court do not have jurisdiction, would a bankruptcy court be required to abstain because of that lack of jurisdiction? And are there any factors, or is there any test for what constitutes a timely motion so that myself and other predators wouldn't be caught in this kind of upheaval about the split of authority? That was the cause of that delay during the first 800 to 3900. So I would ask for guidance on that abstention for the bankruptcy courts, if that is an issue, if they do lack jurisdiction. And just to emphasize that I never misrepresented the court, that I had a final judgment. Can I ask, even putting aside the abstention issue, let's suppose that the panel finds no error in the abstention decision. Your argument, is it not, that you want to be able to go back, at the very least, to the bankruptcy court and prove to the bankruptcy court that there was a state securities violation? Do I understand that correctly? Yes, I would. And whether that be through asking, being allowed to go back to the Utah court to go get all of that in great detail to bring back to the bankruptcy court, or if the bankruptcy court has jurisdiction, I guess, to bring that forward in the abstention case. Did I answer that correctly? Yes, I understand. Okay, if you have concluded your argument, I would ask my colleagues if there are any more questions. None from me. Okay, all right. Well, if you're concluded, that's fine. Is that correct? Anything else you want to offer us, Ms. Sternberger? Thank you. Just to reemphasize that the A2, A4, and A6 claims, those failed because the bankruptcy court applied what I believe to be the wrong legal standard. The judge sidestepped any mention of the Utah Securities Act because, I think, of that concern about that he lacked jurisdiction. And so that analysis was, I think, done under the wrong legal standard. Thank you. Okay, thank you very much. The matter is submitted. We'll get you a written decision as soon as we can. Thank you very much. Thank you for your very good arguments, all of you. Appreciate it. Thank you. Thank you. Thank you very much.  Okay. Shall we call the next matter?
judges: Lafferty, Faris, Barash